IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Corey Jawan Robinson, #294233 | ) | C/A No. 5:10-2593-HMH-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Report and Recommendation |
| | ) | |
| South Carolina Department of Corrections; John Ozmint; | ) | |
| James Blackwell; Sgt. W. Young; Tiffany Starks; Sarah M. | ) | |
| Roberts; Ann Hallman; HCA Gregory Sarver; Lieber | ) | |
| Correctional Institution; David Tatarsky; Anna Moaks; | ) | |
| Candace A. Wigfall; Ramnarine Jaglal; Lt. Dessirence | ) | |
| Lloyd; Sgt. Y. Blowe; DHO A. Brown; Warden Wayne | ) | |
| McCave; Cpl Grealin Fraizer; Sgt J. Smith; Doctor R. | ) | |
| Babb, | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————————— | ) | |

Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC"), filed this 42 U.S.C. § 1983 action alleging that Defendants violated his constitutional rights. This matter is before the court on the motion to dismiss filed by Defendant Lieber Correctional Institution ("LCI") on May 5, 2011, and the motion to dismiss or, in the alternative, for summary judgment, filed by all Defendants on September 15, 2011. ECF Nos. 42, 111. As Plaintiff is proceeding *pro se*, the court entered *Roseboro* orders[1] on May 6 and September 16, 2011, respectively, advising Plaintiff of the importance of such motions and of the need for him to file an adequate response. ECF Nos. 59, 112. Plaintiff responded to Defendants' motions on May 10 and September 30, 2011, respectively, making these motions ripe for consideration. ECF Nos. 61, 117. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule

---

[1] The court entered "*Roseboro* orders" in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

73.02(B)(2)(d) and (e), D.S.C. Because these motions are dispositive, a Report and Recommendation is entered for the court's review.[2]

I.    Background

Plaintiff is an inmate housed at LCI in Ridgeville, South Carolina, where he is serving a 15-year sentence for Resisting Arrest and Assaulting an Officer. ECF No. 1 at 2. Plaintiff filed his initial complaint on October 7, 2010. ECF No. 1. He submitted an amended complaint adding additional defendants and claims, which the court permitted to be filed and served. *See* ECF Nos. 21, 22. His amended complaint and related declarations may be found at Entry No. 1, as well. *See* ECF No. 1-3, 1-4, 1-5.[3] Plaintiff alleges a number of constitutional and other deprivations against Defendants, including violation of due process rights with respect to prison disciplinary actions, untimely processing of grievances, deliberate indifference to medical and dental needs, excessive force, and denial of court access. Plaintiff requests relief in the amount of $500,000.00 for compensatory damages; punitive damages; medical costs; attorneys' fees; injunctive relief; and trial by jury. Am. Compl. 5, ECF No. 1-3.

II.    Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Indeed, "[t]he presence of a few conclusory legal terms does not insulate a

---

[2] Other pending motions are addressed within or by separate order.

[3] The court considers allegations from the pro se Plaintiff's complaint and amended complaint, as appropriate.

complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion." *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the evidence and arguments submitted, the undersigned recommends that Defendants' motions be granted, thus ending this case.

III.     Analysis

Plaintiff filed this litigation pursuant to 42 U.S.C. § 1983, alleging various claims against 20 Defendants. Defendants argue that they are entitled to judgment as a matter of law as to all Defendants. Because Plaintiff's allegations vary as to the multiple Defendants, this Report discusses Defendants' motions as to each Defendant or groups of Defendants as appropriate.[4]

---

[4] One of Defendants' arguments is that Plaintiff's claims should be dismissed because he has not exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a). ECF No. 111 at 4-6. Plaintiff responds that he complied with applicable administrative remedies. ECF No. 117 at 3-5. Because the court

A.  LCI's Motion to Dismiss

Defendant LCI seeks dismissal from Plaintiff's § 1983 action because it is not a "person" against whom a § 1983 action may be brought. Further, LCI points out that Plaintiff did not name it as a Defendant in his amended complaint. The undersigned recommends this motion [ECF No. 42] be granted. *See Jones v. Lexington County Detention Center*, 586 F. Supp. 2d 444, 451 (D.S.C. 2008) (finding Lexington County Detention Center is a physical institution that is not subject to liability under § 1983).

B.  Eleventh-Amendment Immunity: SCDC

Plaintiff claims that SCDC is liable for various reasons, including his alleged denial of medical attention on several occasions. The Eleventh Amendment forbids a federal court from rendering a judgment against an unconsenting state in favor of a citizen of that state. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). State agencies and state instrumentalities share this immunity when they are arms of the state. *See Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997). The Eleventh Amendment also bars this court from granting injunctive relief against the state. *See Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 58 (1996) ("[T]he relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment."); *see also Ala. v. Pugh*, 438 U.S. 781 (1978). Because SCDC is an agency of the state of South Carolina, the undersigned recommends that it be dismissed as a Defendant in this matter.

---

addresses the substance of Plaintiff's claims within, it does not consider Defendants' argument regarding administrative exhaustion.

### C. Plaintiff's Claims of Deliberate Medical Indifference and Campaigning to Harass Him: Defendants Roberts, Sarver, Moaks, Wigfall, Jaglal, McCave, and Babb

Plaintiff alleges medical and administrative personnel Defendants Sarah M. Roberts, Gregory Sarver, Anna Moaks, Candace Wigfall, Dr. Ramnarine Jaglal, Warden Wayne McCave, and Dr. R. Babb violated his Eighth and Fourteenth Amendment rights in campaigning to harass him by deliberately mistreating him and ultimately denying him proper medical care.  ECF No. 1 at 5, ECF No. 1-3 at 2.  Defendants submit that they are entitled to summary judgment as to these claims. ECF No. 111 at 6-11.

In order to prevail on a cause of action for deliberate indifference to medical needs, Plaintiff must show that Defendants were deliberately indifferent to his serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Deliberate indifference to a serious medical need requires proof that the prisoner was suffering from a serious medical need and that the prison staff members "knew of and disregarded an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.  Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  It is not enough that the prisoner show inadequate treatment of a serious need; in order to maintain an action grounded in the Eighth Amendment, the prisoner must demonstrate that the defendant or defendants possessed the requisite state of mind. *Wilson*, 501 U.S. at 297.

Defendants agree that Plaintiff is suspected of having the rare condition of neurosarcoidosis for which Defendant Dr. Robert Babb and others have treated him. ECF No. 111-2 at 2. Defendants submitted Plaintiff's medical records as exhibits to their motion for

5

summary judgment and submit that the records provide undisputed proof that no one affiliated with Defendants has acted with deliberate indifference to Plaintiff's medical needs.

According to Plaintiff's prison medical record, he was seen by outside and internal medical personnel on numerous occasions from November 6, 2009 through June 15, 2011. *See* ECF No. 91-1. Defendants Babb and Dr. George Amonitti report that Plaintiff's symptoms for neurosarcoidosis have been treated successfully although he continues to suffer from the disease. Babb Aff., ECF No. 111-2; Amonitti Aff., ECF No. 111-3. Defendants report that they have referred him to specialists for his disease "and treated him accordingly." *Id.* Plaintiff's medical records provide evidence that Plaintiff has received continuous care from the prison medical staff. *Id.*; ECF No. 91.

In responding to Defendant's Motion for Summary Judgment, Plaintiff did not specifically address the allegation of deliberate indifference with regard to his neurosarcoidosis. ECF No. 117. Because Plaintiff did not provide specific facts or affirmative evidence to establish that Defendants were deliberately indifferent to his neurosarcoidosis, summary judgment for Defendants is appropriate.

Plaintiff claims Defendant Sarah M. Roberts violated his Eighth Amendment Rights by failing to give him medical attention after he was gassed on September 2, 2010. ECF No. 1 at 4. However, Defendant Roberts reports in her affidavit that on September 2, 2010, at approximately 4:00 pm, she evaluated the Plaintiff and found he was not in respiratory distress and that he had no complaints at that time. ECF No. 111-4 (Roberts Aff.). The medical record reflects that Plaintiff was seen by medical personnel on September 2, 2010. ECF No. 91-1 at 21. Plaintiff has

not provided evidence in his Response that would indicate the existence of a genuine dispute of material fact on this issue.

Plaintiff also alleges deliberate indifference against Defendants Dr. Ramnarine Jaglal and Candace Wigfall for a delay in dental care, in that after he was seen in May 2010 for an infected tooth, it was not removed following a round of antibiotics. ECF No. 1-3 at 4. However, the evidence proffered by Defendants shows that on four occasions (March 31, July 28, August 4, and August 11, 2011) since the filing of this lawsuit wherein Plaintiff contends he suffers from tooth pain, Defendant Jaglal has recommended extraction, followed by Plaintiff's refusal to allow the tooth to be removed. His prison medical records reflect that Plaintiff was instructed to take antibiotics before having his tooth pulled and to request a follow up after he completed the antibiotics if his pain persisted. ECF No. 91-1 at 24. Plaintiff makes no allegation that he requested a follow up visit and was refused. On September 21, 2010, the Plaintiff claimed he was again in pain. ECF No. 91-1 at 20. Plaintiff's request was received by medical personnel, but because of lockdown security, Dr. Jaglal was unable to see Plaintiff and instead set an appointment for October 28, 2010. Plaintiff did not appear for or reschedule that appointment. ECF No. 91-1 at 18-19; ECF No. 111-6 at 2.

Plaintiff has not proffered any responsive facts that indicate summary judgment would be inappropriate. Because Plaintiff has not established a viable claim of deliberate indifference, the undersigned recommends summary judgment be granted. Plaintiff has repeatedly refused the treatment he claims to seek, and his claims against Defendants Jaglal and Wigfall should be dismissed.

Plaintiff also complains that Warden McCave, Corporal Frazier, and Sgt. Smith were deliberately indifferent to a substantial risk of harm to him, conspiring to cause him harm, failing to provide medical treatment, and engaging in a cover up stemming from an altercation between the Plaintiff and a cellmate by the name of Murray. ECF No. 1-4 at 1. *Farmer* requires that an inmate "show that he is incarcerated under conditions posing a substantial risk of serious harm" and that prison officials were deliberately indifferent to an inmate's safety. 511 U.S. at 834. An official acts with the requisite deliberate indifference if he is aware of an "excessive risk to inmate…safety" and disregards that risk. *Id.* at 837. In this context, an officer's awareness of the risk is evaluated subjectively. "[T]he official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and must in fact also have drawn the inference. *Id.* No liability exists, however, if an official reasonably responded, "even if the harm was ultimately not averted." *Id.* at 844.

Plaintiff's allegations as to these Defendants apparently stem from events on October 26, 2011, when Plaintiff was placed in "crisis intervention." ECF No. 1-4 at 1. Plaintiff's medical records indicate that he was placed in crisis intervention after vocalizing a desire to hurt himself. ECF No. 91-1 at 17-18. Plaintiff was released from crisis intervention per his request on October 29, 2010. *Id.* Around noon on October 29, 2010, Plaintiff was involved in an altercation with his cellmate. ECF No. 1-4 at 2. Plaintiff complains that following the fight, he was "denied medical." However, the record shows LPN Leroy Pollard evaluated the Plaintiff. ECF No. 79-2 at 1. According to the record, Plaintiff made no requests to medical or security personnel regarding treatment for any alleged injury or pain resulting from the altercation with the other inmate. ECF No. 91-1 at 17.

Plaintiff claims that inmate Murray was an improper cellmate because he had been convicted of a violent crime.  However, classification is within SCDC's purview and Defendants report that according to inmate Murray's disciplinary history, he was not a violent prisoner.  ECF No. 111-11.  In responding to Defendant's motion for summary judgment, Plaintiff has raised no issues of fact indicating Defendants had reason to believe inmate Murray was a danger to Plaintiff.[5]

Plaintiff has not presented any factual issues  as to Defendants McCave, Fraizer, or Smith, and the undersigned recommends summary judgment be granted as to each of them on the claims that they were medically indifferent to Plaintiff's needs and the claims that they attempted to cover up evidence of an altercation between his cellmate and him.

D.  Plaintiff's Claims of Excessive Force: Defendants Young, Starks, and Lloyd

Plaintiff alleges Defendants Sgt. W. Young, Tiffany Starks, and Lt. Dessirence Lloyd used excessive force against him on several occasions when mace was used to subdue his behavior. ECF No. 1-3 at 1-3. Defendants seek summary judgment, arguing that, although some facts are disputed regarding the alleged incidents, facts that have been alleged and admitted by Plaintiff support summary judgment for Defendants on these claims. ECF No. 111 at 12-15.

The Eighth Amendment prohibition of "cruel and unusual punishment" "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756,

---

[5] In his amended complaint, Plaintiff also includes a vague reference to "officers slander[ing] [his] name to his cellmate." ECF No. 1-3 at 5. To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Because Plaintiff cannot bring a defamation claim under § 1983, he cannot pursue any claim of slander. *Wildauer v. Frederick Cnty.*, 993 F.2d 369, 373 (4th Cir. 1993) (finding § 1983 "cannot be used as a vehicle for asserting a claim of defamation") (internal citations omitted).

761 (4th Cir.1996). To establish a constitutional excessive force claim, the inmate must establish that the "prison official acted with a sufficiently culpable state of mind (subjective component); and that the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir.2008) (citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)).    Plaintiff bears a heavy burden to satisfy the subjective component of the claim in that he must prove Sgt. W. Young, Officer Tiffany Starks, and Lt. Dessirece Lloyd used mace on him "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).

The Supreme Court has identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).  The Fourth Circuit has observed that "[i]t is generally recognized that it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain."  *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) (internal quotation marks omitted).

Plaintiff alleges that Sgt. W. Young used excessive force against him on August 9, 2010 by gassing him with mace in the face and eyes, and subsequently refused him medical attention. ECF No. 1- 3.  Plaintiff admits to using profanity with Sgt. Young repeatedly.  *Id*.  According to

Sgt. Young's Affidavit, when Plaintiff did not obey her order to cease his disruption, Plaintiff was gassed. ECF No. 111-10.  Plaintiff was seen by Nurse Sarah Roberts and was found to be in no distress following the incident.  ECF No. 111-4 at 2.  By his own admission, Plaintiff was creating a disturbance.  As to the amount of the force used, the Plaintiff does not dispute that Sgt. Young only used one burst of gas. As to the perceived threat, the record indicates that Plaintiff's continued use of vulgar language was reasonably perceived to be an attempt by the Plaintiff to incite troublesome conduct of other inmates, in particular, with his repeated use of the highly inflammatory derogatory remark ("p---y").  ECF No. 79-4 at 1; ECF No. 111-10 at 2.  Finally, to the extent that the Plaintiff broadly asserts that he received no medical treatment following the incident, Plaintiff has not alleged that he suffered any injury from the gas. Further, his medical records indicate that Nurse Roberts evaluated him. ECF No. 111-4; ECF No. 91-1 at 22.

Plaintiff alleges that Sgt. Young again used excessive force against him on September 2, 2010, gassing him and subsequently refusing him medical attention.  ECF No. 1 at 3.  On that date, Sgt. Young found Plaintiff masturbating in his cell and ordered him to stop his actions. ECF No. 103-1; ECF No. 111-10.   After failing to obey her order to cease his disruption, Plaintiff was gassed.  *Id.* Plaintiff does not dispute that Sgt. Young only used one burst of mace but appears to assert he should not be gassed for masturbating.  ECF No. 28 at 2.  As to the perceived threat, the Plaintiff continued his lewd behavior and did not stop after being given a direct order.  ECF No. 111-10.  Finally, to the extent that the Plaintiff broadly asserts that he received no medical treatment following the gassing, Plaintiff has not alleged that he suffered any injury from the gas. He was assessed after the incident, and he was seen by multiple medical

personnel on September 2, 2010, including Nurse Roberts a few hours later.  ECF No. 111-4; ECF 111-11; ECF No. 91-1 at 21.

Later on September 2, 2010, Officer Tiffany Starks and Nurse Sarah Roberts found Plaintiff masturbating in his cell and ordered him to stop his actions. ECF No. 111-4; ECF 111-11; ECF No. 104-1.  After failing to obey Officer Stark's order to cease his disruption, Plaintiff was gassed.  ECF No. 111-11.  Plaintiff was seen by Nurse Roberts and was found to be in no distress following the incident.  ECF No. 111-4; ECF 111-11; ECF No. 91-1 at 21.  As to the perceived threat, Plaintiff knew that Nurse Roberts and Officer Starks were delivering him his medicine when he committed this behavior, and did not stop after he was given a direct order. ECF No. 111-4; ECF 111-11;  ECF No. 104-1.  As to the amount of force used, in her "Use of Force" report Officer Starks reports she used "two short bursts" of mace.  ECF No. 111-11 at 5. Finally, to the extent that the Plaintiff broadly asserts that he received no medical treatment following this gas incident, he has not only failed to allege that he suffered any injury from the gas, but he fails to acknowledge the written record of him being assessed by Nurse Roberts, who, according to his own allegations, witnessed the event and found him in no distress.

On November 15, 2010, Sgt. Dessirence Lloyd found Plaintiff masturbating in his cell. ECF No. 104-1; ECF No. 111-12. After failing to obey her order to cease his disruption, Plaintiff was gassed. ECF No. 104-1; ECF No. 111-12.Plaintiff was seen by medical personnel and was found to be in no distress following the incident. ECF 111-12. As to the perceived threat, the Plaintiff continued his lewd behavior and did not stop after being given a direct order.  *Id.*  As to the amount of force used, Sgt. Lloyd in her affidavit reports she "used only  the force needed to

return order to the cell block," *Id.* at 2, and her report records using "two short bursts" of mace. *Id.* at 4.

Most recently in *Wilkins v. Gaddy*, 130 S. Ct. 1175 (2010), the Supreme Court has reiterated that the "core judicial inquiry" in evaluating an Eighth Amendment claim of excessive force was not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 130 S. Ct. at 1178. The Supreme Court also noted that the extent of injury still is to be considered in evaluating whether the "use of force could plausibly have been thought necessary in a particular situation" and as a factor in determining the amount of force applied. *Id.* (internal quotations omitted). The Court still recognizes that "not every malevolent touch by a prison guard gives rise to a federal cause of action … An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* Herein, Plaintiff has alleged no injury beyond immediate discomfort, and the facts demonstrate that he was seen by medical personnel subsequent to each event. Therefore, summary judgment for Defendants is appropriate.

The facts in this case are comparable to *Brown v. Walker*, C/A No. 9:09-3064-RMG, 2010 WL 4484185 (D.S.C. Oct. 6, 2010), *adopted in* 2010 WL 4482100 (Nov. 1, 2010), in which the plaintiff conceded that he had engaged in a verbal confrontation with the correctional officer, and the evidence showed that the amount of mace used was very small. In addition, the court noted that: "[W]hile being sprayed with a chemical spray is no doubt uncomfortable; there is no evidence before the Court sufficient to give rise to a genuine issue of fact as to whether Plaintiff suffered any significant injury as a result of this incident." Here, Plaintiff does not

13

dispute that small amounts of mace (one or two bursts) were used in each instance, nor does he argue that less force could have been used to the same effect. Further, Plaintiff has not provided evidence that indicates these Defendants acted with a sufficiently culpable state of mind to state an Eighth Amendment claim. Additionally, Plaintiff has failed in his Response to the Defendants' Motion for Summary Judgment to raise genuine issues of material facts as to these matters. Therefore, the undersigned recommends summary judgment as to these Defendants on these claims.

E.  Plaintiff's Claims Against Defendants Ozmint, Hallman, Tatarsky, and Blowe

Next, Defendants argue that Plaintiff's Amended Complaint, liberally construed in his favor, references Defendants Ozmint, Hallman, Tatarsky, and Blowe, but he does not sufficiently set forth his claims as to these Defendants to satisfy the pleading requirements of Federal Rule of Civil Procedure 8. ECF No. 111 at 16-19. The undersigned agrees and recommends these Defendants be dismissed.

Plaintiff avers that Jon Ozmint and Ann Hallman are liable to him because of issues he claims exist regarding enforcement of policies and procedures relating to the prison's grievance system. Plaintiff alleges that Jon Ozmint, the Director of SCDC until 2011, is liable for violating his Fourteenth Amendment rights and his alleged right to be free from "false advertisement" based on Defendant Ozmint's role in enforcing the Inmate Disciplinary Policy and Grievance System" at LCI. ECF No. 1 at 3. However, Plaintiff does not attribute any particular action or inaction on the part of Director Ozmint that would support any theory of liability.

Similarly, Plaintiff claims Ann Hallman, head of SCDC's inmate grievance branch, violated his Fourteenth Amendment Rights by not having the inmate grievance coordinator at

14

LCI follow "proper standard of the grievance system for inmates[.]" ECF No. 1 at 3. However, Plaintiff provides no discussion of a specific standard or how Defendant Hallman allegedly violated his rights. Accordingly, Plaintiff has not presented any facts that would support a claim against Defendant Hallman, and she should be dismissed as a Defendant.

Additionally, access to a prison grievance procedure is not a constitutionally protected right. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994). "[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state. *Id*., citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991). *See also Shabazz v. Maynard*, No. 0:02–1208–10BD, 2002 WL 32332072 (D.S.C. Nov.25, 2002)(indicating that "a violation of the SCDC's grievance policy is not a violation of any federal right"). Therefore, any violation of SCDC's grievance policy is not cognizable under § 1983.

Plaintiff claims that David Tatarsky, SCDC's general counsel, violated his rights of equal protection and access to the courts. ECF No. 1-3 at 4. Plaintiff makes these broad claims against Defendant Tatarsky for his failure to provide legal mail, materials, books, clothing and bedding for him. *Id.* However, Plaintiff has provided no specific information regarding what Defendant Tatarsky did or did not do that supports any theory of liability to Plaintiff.

The right of access to the courts is protected by the Due Process and Equal Protection Clauses, *Murray v. Giarratano*, 492 U.S. 1, 11 n.6, (1989), and requires that prisoners be afforded "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). The Sixth Amendment "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate

assistance from persons trained in the law." *Id.* at 828. It has long been recognized that the lawful resort to the courts is part of the First Amendment right to petition the Government for a redress of grievances. *Berryman v. Rieger*, 150 F.3d 561, 567 (6th Cir. 1998). The "touchstone" of a denial of access claim is that inmates are to be afforded "a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Lewis v. Casey*, 518 U.S. 343, 356 (1996).

Here, Plaintiff's general allegation that he has "cases in the court of appeals and district court" (ECF No. 1-3 at 5) does not satisfy the standard outlined in *Lewis*. In that case, the inmate had access to court, but he alleged that officials deprived him of some item necessary for meaningful pursuit of his litigation, such as his already-prepared legal materials. *Lewis* requires a plaintiff to show an actual injury or specific harm to his litigation efforts resulting from denial of the item. 518 U.S. at 343. Stated differently, an inmate must come forward with something more than vague and conclusory allegations of inconvenience or delay in his instigation or prosecution of legal actions.

Here, Plaintiff has not identified a claim or action in court that has been affected by any unavailable legal documents. He has not identified any harm or deprivation the loss allegedly caused. Plaintiff's short allegation against Defendant Tatarsky does not identify any actual injury to his right of access to the courts.  He does not allege that any pending action has been dismissed or otherwise suffered.  In absence of an allegation of actual injury and prejudice arising from any Defendant's actions, Plaintiff fails to state an access-to-court claim upon which relief may be granted under 42 U.S.C. § 1983.  Therefore, this cause of action is subject to dismissal without prejudice. *See Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999) (court may

not rewrite a petition to include claims that were never presented); *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)(court may not construct the plaintiff's legal arguments for him); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (court may not "conjure up questions never squarely presented" to it).

Plaintiff's claim that Defendant Tatarsky has denied him access to the court should be dismissed as a matter of law. Further, to the extent he raises such a claim against other Defendants, that claim should be dismissed as well.

Finally, Defendants argue that Defendant Sergeant Yvette Blowe should be dismissed because Plaintiff has not articulated a viable claim against her. In his amended complaint, Plaintiff claims Defendant Blowe is liable to him on an unidentified theory because she wrote an invalid report. ECF No. 1-3 at 3. Plaintiff fails to state what rights Defendant Blowe violated that would support any theory of liability. Accordingly, Defendant Blowe should be dismissed from this case. Based on the foregoing, Plaintiff's allegations do not establish a claim against Defendants Jon Ozmint, Ann Hallman, David Tatarsky, or Yvette Blowe.[6] Therefore, the Plaintiff's amended complaint should be dismissed for failure to state a claim upon which relief may be granted as to these Defendants.

---

[6] Defendants seek to have Defendant Babb dismissed for failure to state a claim, as well, because Plaintiff's amended complaint does not include a coherent reference to him. ECF No. 111-18. Construing Plaintiff's pleadings in the light most favorable to him, however, the court considers Plaintiff's claims of medical indifference in relation to Dr. Babb, who has treated him on behalf of SCDC. *See* ECF No. 111-2.

F.  Plaintiff's Due Process Claims Based on Disciplinary Actions: Defendants
    Blackwell and Brown

Plaintiff alleges Defendants James Blackwell[4] and DHO Brown violated his due process

rights in connection with prison disciplinary actions. In his complaint and associated filings,

Plaintiff argues that Defendants failed to give him notice of charges, sentenced him unfairly, and

deprived him of the opportunity to be present at his trial and call witnesses on his behalf. ECF

No. 1 at 3, 5; ECF No. 1-4 at 2.

Plaintiff was the subject of several disciplinary actions during the time period discussed

in his pleadings,[5]  but he does not often explain which disciplinary actions he intends to spotlight,

---

[4] Plaintiff alleges the acts of James Blackwell and other Defendants were in "retaliation," presumably for some grievances and/or previous court case against them.  It is well settled that federal or state officials may not retaliate against an inmate for exercising his constitutional rights, including his right to access the courts. *See Am. Civ. Liberties Union v. Wicomico Cnty.*, 999 F.2d 780, 785 (4th Cir. 1993). However, for an inmate to state a colorable claim of retaliation, he must allege that the alleged retaliatory action was taken "in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). To state a cognizable retaliation claim under 42 U.S.C. § 1983, an inmate must "allege sufficient facts to warrant concern that the alleged retaliation might have a chilling effect on the exercise of the right to access the courts and show that he suffered more than de minimis inconvenience." *Goodman v. Smith*, 58 F. App'x 36, 38 (4th Cir. 2003) (citing *Wicomico*, 999 F.2d at 785-86). The inmate must point to "specific facts supporting his claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension." *Id.* (citing *Adams*, 40 F.3d at 75). Plaintiff has not made specific allegations that his access to courts has been chilled or that he has suffered any particular relevant inconvenience because of retaliation. To the extent Plaintiff raised an action regarding retaliation, the undersigned recommends such claims be dismissed.

[5] In one disciplinary action, Plaintiff was accused of public masturbation on September 2, 2010. ECF No. 1 at 3-4.  It appears he was accused of public masturbation on at least two other occasions discussed in the complaint, one of which was on October 6, 2010.  ECF No. 1-5 at 10. Piecing together details offered in his pleadings and attachments, Plaintiff appears to claim he was charged unfairly for a July 24, 2010 incident for which Defendant Blackwell charged him "with 17th offense engaging in a [sexual] act when the code offense (822) has been amended." ECF No. 1 at 5, ECF No. 1-1 at 3. Plaintiff was also charged with the destruction of a sprinkler head on October 29, 2010, for which he was convicted and lost three days of good time credit. ECF No. 1-4, p. 2-3.

leaving the court with a jumble of overlapping dates and alleged violations of due process. However, the court need not attempt to parse Plaintiff's pleadings on this issue further in order to reach the question of individual due process violations here because Plaintiff cannot obtain the relief he apparently seeks by challenging his disciplinary convictions in a § 1983 case.

Plaintiff reports that in addition to time spent on "lockup," he has been deprived of good time credits as a result of his convictions.  ECF No. 1-5 at 2; ECF No. 1-4 at 2-3. He seeks money damages and unspecified "injunction relief."  ECF No. 1-3 at 5. Plaintiff does not explain the type of injunctive relief he seeks with regard to this cause of action. Any attempt to have his good time credits restored should be dismissed because such relief is unavailable in a § 1983 case. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (finding that a prisoner seeking the restoration of good time credits in federal court may only do so by way of writ of habeas corpus).

Neither can Plaintiff proceed on his claim for monetary damages for the alleged deprivation of due process during prison disciplinary proceedings.  In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a state prisoner's claim for damages is not cognizable under § 1983 when success of the action would implicitly question the validity of the conviction or duration of the sentence, unless the prisoner can demonstrate that the conviction or sentence has been previously invalidated.  *Heck*, 512 U.S. at 486-87.  Subsequently, the Court held that *Heck* extends to prisoner claims for damages stemming from a loss of good time credits that allegedly resulted from the state's use of constitutionally invalid procedures. *See Edwards v. Balisok*, 117 S. Ct. 1584, 1587-88 (1997). As the *Edwards* Court explained, a "claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the

decision maker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983." *Id.*

Here, claims in Plaintiff initial complaint include the same claims pressed by the plaintiff in *Edwards*: that he was not allowed to present witnesses in his defense at the hearing, and that his decision-maker was acting in a biased and retaliatory manner. ECF No. 1 at 3 (alleging DHO Blackwell retaliated against him by denying him Due Process); ECF No. 1 at 5 (alleging he was not allowed to call witnesses on his own behalf). *Edwards* holds that these claims are of the sort that, if proven, would imply the invalidity of the prisoner's deprivation and are consequently barred under the rule announced in *Heck*.

*Heck* does not universally apply to all suits challenging prison disciplinary proceedings or institutional offense convictions; however, in situations such as Plaintiff's in which the administrative action affects credits toward release based on good time served, *Heck* bars the § 1983 claim. *Cf. Muhammad v. Close*, 540 U.S. 749, 751 (2004) ("Heck's requirement to resort to state litigation and federal habeas before § 1983 is not, however, implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence."). Plaintiff's pleadings indicate his challenge relates to a loss of good time credits, which would implicate the length of his sentence. *See* Pl.'s Decl. (Oct. 7, 2010), ECF No. 1-5 at 2 ("anytime you get found guilty for a code offense you lose good time for that month accordance (sic) to policy OP-22.14."). Plaintiff has not alleged that he has successfully challenged any of the convictions discussed in his pleadings. Because his remaining sentence calculation is affected, and because Plaintiff has not shown that his institutional convictions and sentences have been

invalidated, his § 1983 due process claim are barred by the holdings in *Heck* and *Edwards* and should be dismissed.

> ### G. No Respondeat Superior as to Defendants SCDC, Ozmint, Hallman, Sarver, Tatarsky, Moaks, and McCave

Defendants SCDC, Ozmint, Hallman, Sarver, Tatarsky, Moaks, and McCave contend that Plaintiff failed to make any actual allegations against them and that they cannot be held liable on a theory of *respondeat superior* or vicarious liability. ECF No. 111 at 31. The doctrine of *respondeat superior* generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Fisher v. Wash. Metro. Area Transit Auth.*, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984).

Plaintiff has not alleged that Defendants SCDC, Ozmint, Hallman, Sarver, Tatarsky, Moaks, and McCave were personally responsible for any of the incidents or acted in any way other than a supervisory role. Further, Plaintiff has not shown that Defendants SCDC, Ozmint, Hallman, Sarver, Tatarsky, Moaks, and McCave were deliberately indifferent to, or tacitly authorized, any of the actions or inactions of SCDC employees. Thus, Plaintiff fails to show that Defendants SCDC, Ozmint, Hallman, Sarver, Tatarsky, Moaks, and McCave are liable on a theory of *respondeat superior* or supervisory liability, and the claims against these Defendants should be dismissed as a matter of law.

H. Qualified Immunity: Defendants Ozmint, Blackwell, Young, Starks, Hallman, Sarver, Tatarsky, Moaks, Lloyd, Brown, and McCave

Defendants Ozmint, Blackwell, Young, Starks, Hallman, Sarver, Tatarsky, Moaks, Lloyd, Brown, and McCave also assert that they are entitled to qualified immunity in their individual capacities. ECF No. 111 at 22-25. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), established the standard that the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, *assuming arguendo* that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

22

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298 (internal citations omitted).

In the instant case, Plaintiff has not established any theory of liability upon the part of Defendants, and, furthermore, Plaintiff has failed to establish the existence of any constitutional deprivation. However, even if the district court were to find that Plaintiff has established some theory of liability upon the part of Defendants, and therefore, the existence of a constitutional deprivation, Defendants are still entitled to qualified immunity. The record before the court shows that as to Plaintiff and the specific events at issue, these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, these Defendants are entitled to qualified immunity.

I.    Other Defenses

Defendants also claim that the South Carolina Tort Claims Act shields them from liability for any tort Plaintiff may have alleged against them. The undersigned agrees that the Tort Claims Act protects SCDC, as an agency of the State of South Carolina, and its employee defendants

23

(John Ozmint; James Blackwell; Sgt. W. Young; Tiffany Starks, Sarah M. Roberts; Ann Hallman; HCA Gregory Sarver; David Tatarsky; Anna Moaks; Candace A. Wigfall; Ramnarine Jaglal; Lt. Dessirence Lloyd; Sgt. Y. Blowe; DHO A. Brown; Warden Wayne McCave; Cpl. Grealin Frazier; Sgt. J. Smith; and Dr. R. Babb) from tort liability. *See* S.C. Code Ann. §15-78-10, *et seq*.

Further, the undersigned agrees with Defendants that, to the extent Plaintiff is construed to have brought medical negligence claims as to Defendants Roberts, Sarver, Jaglal, Moaks, and Babb, Plaintiff may not proceed on such claims because he has not complied with the South Carolina Medical Malpractice statute. *See* S.C. Code Ann. § 15-79-110, *et seq*.

IV.    Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendant LCI's Motion to Dismiss (ECF No. 42) and Defendants' Motion to Dismiss or for Summary Judgment (ECF No. 111) be granted, and that this case be dismissed. If the district judge accepts this recommendation, all other pending motions, including Plaintiff's motion for partial summary judgment (ECF No. 67), Plaintiff's motion for a temporary restraining order and to show cause (ECF No. 82), and Plaintiff's motion for summary judgment (ECF No. 97) will be moot.

IT IS SO RECOMMENDED.

January 31, 2012                                        Kaymani D. West
Florence, South Carolina                          United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

24