IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| Corey Jawan Robinson, | ) | |
| | ) | C.A. No. 5:10-2593-HMH-KDW |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| South Carolina Department of Corrections; | ) | |
| John Ozmint; James Blackwell; Sgt. W. | ) | |
| Young; Tiffany Starks; Sarah M. Roberts; | ) | |
| Ann Hallman; HCA Gregory Sarver; | ) | |
| Lieber Correctional Institution; David | ) | |
| Tatarsky; Anna Moaks; Candace A. | ) | |
| Wigfall; Ramnarine Jaglal; Lt. Dessirence | ) | |
| Lloyd; Sgt. Y. Blowe; DHO A. Brown; | ) | |
| Warden Wayne McCave; Cpl. Grealin | ) | |
| Frazier; Sgt. J. Smith; Doctor R. Babb, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court with the Report and Recommendation of United States Magistrate Judge Kaymani D. West, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 of the District of South Carolina.[1] Corey Jawan Robinson ("Robinson"), a state prisoner proceeding pro se, brought this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights. Defendant Lieber Correctional Institution ("LCI") filed a motion to dismiss on May 5, 2011. On September 15, 2011, the Defendants collectively

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

1

filed a motion to dismiss, or in the alternative, motion for summary judgment. Magistrate Judge West recommends granting both motions. For the reasons explained below, the court adopts the magistrate judge's Report and Recommendation.

## I. Factual and Procedural Background

Robinson is a South Carolina prisoner serving a fifteen-year term of imprisonment for resisting arrest and assaulting an officer. (Def. Mem. Supp. Summ. J. 2.) He commenced this § 1983 action on October 7, 2010, alleging multiple constitutional and other deprivations against Defendants including deliberate indifference to his medical needs, deliberate indifference to a substantial risk of harm, excessive force, denial of court access, and violation of due process rights with respect to prison disciplinary actions. (Am. Compl., generally.) Magistrate Judge West recommends granting LCI's motion to dismiss because LCI is not a "person" against whom a § 1983 action may be brought. (Report & Recommendation 4.) Robinson does not object to that portion of the Report and Recommendation. The magistrate judge further determined that the remaining Defendants are entitled to summary judgment on each of Robinson's claims. Robinson filed objections.

## II. Discussion of the Law

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly

disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Monahan v. County of Chesterfield, 95 F.3d 1263, 1265 (4th Cir. 1996).

### B. Objections

Objections to the Report and Recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). In the absence of specific objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Upon review, the court finds that the majority of Robinson's objections are non-specific, unrelated to the dispositive portions of the magistrate judge's Report and Recommendation, or merely restate his claims. However, he raises specific objections to the magistrate judge's determination that Defendants are entitled to summary judgment on his deliberate indifference and excessive force claims. The court addresses each claim in turn.

### 1. Defendants Sarver, Dr. Babb, and Moaks

Robinson objects to the magistrate judge's determination that Defendants HCA Gregory Sarver ("Sarver"), Doctor R. Babb ("Dr. Babb"), and Anna Moaks ("Moaks") are entitled to summary judgment on his claim for deliberate indifference to his medical needs. (Objections 2.) To establish an Eighth Amendment violation for deliberate indifference to a serious medical need, Robinson "must prove two elements: (1) that objectively the deprivation of a basic human need was sufficiently serious, and (2) that subjectively the prison officials acted with a sufficiently culpable state of mind." Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (internal quotation marks omitted). A medical need is sufficiently serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). To satisfy the second prong, Robinson must show more than negligence or malpractice; rather, he must establish that Defendants acted with "either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1999). With respect to health care providers, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id.

Robinson alleges that Sarver, Dr. Babb, and Moaks were deliberately indifferent to a serious medical need by delaying treatment for glaucoma in his right eye. (Am. Compl. ¶ 7.) On June 16, 2010, Robinson was examined by pulmonologist Dr. Paul Kirschenfeld ("Dr. Kirschenfeld") at Lexington Medical Center for treatment of a rare condition he has called sarcoidosis. (Def. Resp. Opp'n Pl. Mot. TRO Ex. 1 (Robinson Medical Records at 16).) Dr. Kirschenfeld prescribed prednisone for Robinson to treat his sarcoidosis. (Id. Ex. 1

(Robinson Medical Records at 15).) He further observed weakness in Robinson's right eye and referred him to an ophthalmologist for an examination. (Id. Ex. 1 (Robinson Medical Records at 102).) Robinson was examined by Dr. Babb at the prison medical clinic on October 1, 2010. (Id. Ex. 1 (Robinson Medical Records at 11).) According to Robinson's medical records, Dr. Babb noted that Robinson reported "vague eye complaints" and informed Dr. Babb that he had previously been referred to an eye doctor. (Id. Ex. 1 (Robinson Medical Records at 11).) Dr. Babb administered Robinson a fundoscopic exam and found that his eye was "grossly normal." (Def. Resp. Opp'n Pl. Mot. TRO Ex. 1 (Robinson Medical Records at 11).) Later that same day, Dr. Babb discovered Dr. Kirschenfeld's recommendation that Robinson be seen by an ophthalmologist, and he referred Robinson for a ophthalmology consultation. (Id. Ex. 1 (Robinson Medical Records at 11).) Robinson was examined by an ophthalmologist on June 14, 2011. (Id. Ex. 1 (Robinson Medical Records at 1).) The ophthalmologist found that Robinson had glaucoma in his right eye, and he prescribed Robinson eye drops to be taken for six to eight weeks. (Id. Ex. 1 (Robinson Medical Records at 1).)

Robinson alleges that Sarver, Moaks, and Dr. Babb acted with deliberate indifference by delaying his examination to the ophthalmologist for eleven months. (Am. Compl. ¶ 7; Objections 2.) Robinson's claims, however, cannot survive summary judgment because he has failed to allege or otherwise show that he suffered any harm as a result of the eleven-month delay. Webb v. Hamidullah, No. 06-7381, 2008 WL 2337608, at *7 (4th Cir. June 6, 2008) (unpublished) ("An Eighth Amendment violation only occurs, however, if the delay results in some substantial harm to the patient."). Furthermore, there is no evidence in the record that Sarver and Moaks were personally involved in the delay of medical treatment. McAdoo v. Toll,

591 F. Supp. 1399, 1404 (D. Md. 1983) ("[L]iability under § 1983 is conditioned on a showing of some personal involvement or participation in the denial of civil rights."). Although Robinson's medical records show that he raised "vague eye complaints" to Dr. Babb on October 1, 2010, Robinson has produced no evidence showing that Dr. Babb personally delayed treatment by an ophthalmologist. (Def. Resp. Opp'n Pl. Mot. TRO Ex. 1 (Robinson Medical Records at 11).) To the contrary, Robinson's medical records demonstrate that as soon as Dr. Babb became apprised of Dr. Kirschenfeld's recommendation that Robinson be seen by an eye doctor, he immediately referred him for an ophthalmology consultation. (Id. Ex. 1 (Medical Records at 11).) Based on the foregoing, Sarver, Dr. Babb, and Moaks are entitled to summary judgment.

Robinson further alleges that Sarver, Dr. Babb, and Moaks were deliberately indifferent to a serious medical need by delaying and denying treatment for his sarcoidosis. Specifically, he complains that Defendants denied him Ensure, a dietary supplement drink, for weight loss in April 2010 and that they refused him access to doctors for the treatment of his sarcoidosis. (Am. Compl. ¶ 7; Objections 2.) Robinson, however, has neither alleged nor produced any evidence showing that Sarver and Moaks were personally involved in either of the alleged deprivations. Furthermore, there is no evidence that Dr. Babb acted with deliberate indifference by denying Robinson Ensure. According to Robinson's medical records, Dr. Babb noted on April 20, 2010 that Robinson could have one Ensure each day for one month, and that his weight should be monitored. (Def. Resp. Opp'n Pl. Mot. TRO Ex. 1 (Robinson Medical Records at 18).) Robinson has failed to produce any evidence demonstrating that Defendants acted with deliberate indifference by denying him Ensure for weight loss. Furthermore, although Robinson

6

conclusory alleges that prison officials have denied him access to "a sarcoidosis doctor," he has not proffered any evidence showing that he ever requested treatment and was denied access to a doctor. His medical records demonstrate that he was seen on multiple occasions by an ophthalmologist, pulmonologist, and neurologist between November 6, 2009 and June 15, 2011. Based on the foregoing, the court agrees with the magistrate judge's determination that Sarver, Moaks, and Dr. Babb are entitled to summary judgment on Robinson's claims for deliberate indifference.

### 2. Defendant Roberts

Robinson next objects to the magistrate judge's determination that Defendant Sarah M. Roberts ("Roberts") is entitled to summary judgment on Robinson's claim for deliberate indifference. (Objections 2.) Robinson alleges that Roberts violated his Eighth Amendment rights by failing to administer medical treatment after being sprayed with chemical munitions. (Am. Compl. ¶ 6; Objections 2.) On September 2, 2010, Roberts and Officer Tiffany Starks ("Starks") observed Robinson masturbating when they arrived at his cell to deliver his medication. (Def. Mot. Summ. J. Ex. 4 (Use of Force Doc. at 5).) Starks administered two short bursts of chemical munitions towards Robinson's face and chest after he defied her commands to cease his lewd conduct. (Id. Ex. 4 (Use of Force Doc. at 5).)

Robinson contends that Roberts acted with deliberate indifference by failing to administer medical treatment following his confrontation with Sparks. However, he has failed to allege any discernable injury as a result of the confrontation or otherwise produce any evidence showing the existence of a serious medical need. See Duncan v. Gordon, C/A No. 8:06-cv-396-MBS, 2007 WL 1031939, at *8 (D.S.C. Mar. 29, 2007) (unpublished) (noting that

prisoner's allegations that he suffered "breathing complications, chest pain, and mental depression from being sprayed with chemical munitions" failed to establish a serious medical need necessary to demonstrate an Eighth Amendment violation). Roberts, moreover, averred that Robinson appeared to be in no acute distress following the confrontation and that he sustained no injury as a result of confrontation. (Def. Mot. Summ. J. Ex. 4 (Roberts Aff. ¶ 12).) Based on the foregoing, the court agrees with the magistrate judge's determination that Roberts is entitled to summary judgment.

### 3. Defendants Jaglal and Wigfall

Robinson alleges that Defendants Dr. Ramnarine Jaglal ("Dr. Jaglal") and Candace Wigfall ("Wigfall") acted with deliberate indifference by delaying dental care for an infected tooth. (Am. Compl. ¶ 14.) Robinson reported to the prison dental clinic on May 14, 2010, complaining that his left cheek was swollen and sensitive to touch. (Def. Resp. Opp'n Pl. Mot. TRO Ex. 1 (Robinson Medical Records at 16).) Dr. Jaglal found that Robinson had an abscessed tooth, and he prescribed pain medication and antibiotics for Robinson. (Id. Ex. 1 (Robinson Medical Records at 16).) Robinson again complained about tooth pain on October 16, 2010, and he requested that the tooth be extracted. (Id. Ex. 1 (Robinson Medical Record at 11).) Dr. Jaglal scheduled a follow-up appointment to extract the tooth on October 28, 2010, but Robinson was unable to make the appointment because he was placed in crisis intervention. (Id. Ex. 1 (Robinson Medical Records at 10); Objections 3.) Robinson was seen again by Dr. Jaglal on March 31, July 28, August 4, and August 11, 2011. (Def. Mot. Summ. J. Ex. 6 (Jaglal Aff. ¶¶ 10-13).) Dr. Jaglal avers that at each appointment, he recommended that the tooth be extracted but Robinson refused treatment. (Def. Resp. Opp'n Pl.

Mot. TRO Ex. 1 (Robinson Medical Records at 6, 66); Def. Mot. Summ. J. Ex. 6 (Jaglal Aff. ¶¶ 10-13).)

On this record, Robinson is unable to demonstrate that Dr. Jaglal and Wigfall acted with deliberate indifference by delaying treatment for his abscessed tooth. Robinson does not allege any circumstance where Defendants ignored his request for treatment. Prison medical records show that Defendants repeatedly responded to Robinson's complaints about tooth pain, and that Robinson refused Dr. Jaglal's recommendation to extract the tooth. Furthermore, he has failed to allege or otherwise show how a delay in treatment has caused substantial harm. Webb, 2008 WL 2337608, at *7. Based on the foregoing, the court agrees with the magistrate judge's determination that Dr. Jaglal and Wigfall are entitled to summary judgment.

### 4. Defendants McCave, Frazier, and Smith

Robinson next objects to the magistrate judge's determination that Defendants Warden McCave ("McCave"), Cpl. Frazier ("Frazier"), and Sgt. J. Smith ("Smith") are entitled to summary judgment on his claims that these Defendants were deliberately indifferent to a substantial risk of harm to him, conspired to cause him harm, and failed to provide him the proper medical treatment. (Am. Compl. ¶ 16; Objections 3-4.) Robinson's claims relate to an altercation with his cell mate, Bryan Murray ("Murray"). On October 26, 2010, Robinson was removed from his cell and placed in crisis intervention. (Def. Resp. Opp'n Pl. Mot. TRO Ex. 1 (Robinson Medical Records at 9).) He was released from crisis intervention on October 29, 2010, after denying having homicidal or suicidal thoughts and telling prison officials that he merely "needed a time out alone." (Id. Ex. 1 (Robinson Medical Records at 9).) Robinson claims that he told prison officials, however, that he "did not feel comfortable" returning to his

9

cell because Murray had been convicted of a violent crime. (Am. Compl. ¶ 16; Pl. Mem. Supp. Summ. J. 1-2; Objections 3.) Despite his concerns, he contends McCave "gave a directive to put me back in [my] cell with inmate Murray" around noon on October 29, 2010. (Id.) Minutes after he was returned to his cell, Robinson and Murray got into an altercation. Murray's declaration, submitted by Robinson in support of his motion for summary judgment, states that Robinson initiated the altercation by placing him in a "choke hold." (Pl. Mot. Partial Summ. J. Ex. 3 (Murray Decl. ¶ 3).) Robinson alleges that as a result of the altercation, he "hurt [his] side on [the] edge of [his] bed." (Am. Compl. ¶ 16.) He contends that following the altercation, Defendants were deliberately indifferent to a substantial risk of harm because he was not separated from Murray for five hours following the confrontation. (Pl. Mem. Supp. Mot. Summ. J. 2; Objections 4.)

Prison officials have a duty under the Eighth Amendment "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834. To establish an Eighth Amendment claim for failure to protect, a prisoner must show, first, that he was incarcerated under conditions posing a substantial risk of serious harm, and second, that prison officials acted with deliberate indifference. Id. "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). "[T]o demonstrate such an extreme deprivation, a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of

such serious harm resulting from the prisoner's exposure to the challenged conditions." Id. (internal citation and quotation marks omitted). Robinson must also prove that prison officials had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834. To do so, he must establish that prison officials knew of and disregarded "the objectively serious condition, medical need, or risk of harm." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995).

Robinson has failed to produce any evidence sufficient to satisfy either the objective or subjective prongs of the Eighth Amendment analysis. Although he baldly claims that prison officials subjected him to a risk of harm because they failed to separate him from Murray for five hours following the altercation, he has failed to allege any significant injury as a result of being confined with Murray. Instead, he merely states that he did not feel comfortable around Murray because he "did not know if [Murray] had a knife." (Am. Compl. ¶ 16.) However, a mere "generalized concern for his safety or welfare" is insufficient to satisfy the objective element of a claim for deliberate indifference. Drayton v. Cohen, No. CA 2:10-3171-TMC, 2012 WL 666839, at *7 (D.S.C. Feb. 29, 2012) (unpublished). Without any evidence that Robinson was exposed to an objectively serious risk of harm, the court agrees with the magistrate judge's determination that Defendants are entitled to summary judgment. Furthermore, Robinson has failed to produce any evidence showing that Defendants subjectively knew of and disregarded an objectively serious risk of harm. Although Robinson contends that he told prison officials he did not feel comfortable being detained with Murray because he had been convicted of a violent crime, (Pl. Mem. Supp. Summ. J. 1; Objections 3), such an obscure warning is insufficient to place prison officials on notice that Murray posed a substantial risk of harm. Robinson's own witness averred that Robinson initiated the confrontation with Murray.

11

(Pl. Mot. Partial Summ. J. Ex. 3 (Murray Decl. ¶ 3).) Furthermore, prisoners have no constitutional right to choose their cell mate, and there is no evidence that Murray had a history of violence while incarcerated at LCI. (Def. Mem. Supp. Summ. J. 11.) Based on the foregoing, McCave, Frazier, and Smith are entitled to summary judgment.

Robinson conclusorily alleges that he was denied medical treatment following the altercation with Murray. (Am. Compl. ¶ 16; Objections 4; Pl. Mem. Supp. Mot. Summ. J. 2.) However, Robinson does not allege, and there is no evidence in the record to support, that he requested medical treatment for any alleged injury or pain resulting from the altercation. He further fails to identify any specific Defendant who knew of or disregarded an allegedly serious medical need. Consequently, summary judgment is proper.

### 5. Defendants Young, Starks, and Lloyd

Robinson next alleges claims of excessive force against Defendants Sgt. W. Young ("Young"), Starks, and Lt. Dessirence Lloyd ("Lloyd"). Robinson's claims pertain to Defendants' use of chemical munitions on four occasions between August and November 2010. He alleges that on August 9, 2010, Young used unconstitutionally excessive force when he discharged one burst (11.4 grams) of chemical munitions towards Robinson's face. (Am. Compl. 3; Def. Mot. Summ. J. Ex. 10 (Young Aff. ¶ 10).) Robinson concedes, however, that prior to Young's use of force, he engaged in a verbal confrontation with Young and used profane language. (Am. Compl. ¶ 3.) On September 2, 2010, Young again administered one burst (6 grams) of chemical munitions toward Robinson's facial area while he was confined in his cell. (Id. ¶ 4; Def. Mot. Summ. J. Ex. 10 (Young Aff. ¶ 13).) Young averred that she sprayed chemical munitions after she observed Robinson masturbating in his cell, and he defied

repeated orders to cease his lewd conduct. (Def. Mot. Summ. J. Ex. 10 (Young Aff. ¶¶ 12, 13).) Later that same day, Starks and Nurse Sarah Roberts arrived at Robinson's cell to deliver medication. They observed Robinson masturbating, and Starks directed him to stop. (Id. Ex. 11 (Starks Aff. ¶ 5).) Robinson disobeyed Starks' command, and she administered two short bursts (28.1 grams) of chemical munitions towards Robinson's facial area. (Id. Ex. 11 (Starks Aff. ¶¶ 7-9).) Finally, on November 15, 2010, Lloyd found Robinson masturbating in his cell. (Id. Ex. 12 (Lloyd Aff. ¶¶ 7, 8).) After he refused to obey her order to quit his conduct, she administered two short bursts (31 grams) of chemical munitions. (Id. Ex. 12 (Lloyd Aff. ¶ 9).)

To establish a claim for excessive force under the Eighth Amendment, a prisoner must show that "the prison official acted with a sufficiently culpable state of mind (subjective component) and . . . the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008). Whether there is an Eighth Amendment violation in the context of a prison disturbance depends upon "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010). The predominate focus in a claim for excessive force is not on the extent of the injury but rather the nature of and justification for the inflicted force. Id. at 1179. The Supreme Court has identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm: (1) "the need for application of force"; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." Whitley v.

Albers, 475 U.S. 312, 321 (1986). Although the "core judicial inquiry" in a claim for excessive force focuses upon a prison official's justification for force, the extent of a prisoner's injuries remains relevant in determining whether the application of force was reasonable. Wilkins, 130 S. Ct. at 1178. As the Supreme Court emphasized, "[a]n inmate who complains of a push or shove *that causes no discernible injury* almost certainly fails to state a valid excessive force claim." Id. (emphasis added).

The Fourth Circuit has recognized that the "limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate." Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996) (internal quotation marks omitted). Consequently, a prison official's use of chemical munitions on an inmate to prevent disorder generally does not infringe the Eighth Amendment's prohibition against cruel and unusual punishment as long as the quantity of chemical munitions is commensurate with the gravity of the occasion. Bailey v. Turner, 736 F.2d 963, 968 (4th Cir. 1984). Whether the use of chemical munitions on an inmate constitutes excessive force depends upon "the totality of the circumstances, the provocation, the amount of gas used, and the purposes for which the gas was used." Id. at 969.

Robinson is unable to demonstrate that the force inflicted was unconstitutionally excessive. First, the evidence demonstrates that prison officials used relatively small amounts of chemical munitions in each of the confrontations. It is undisputed that Defendants never administered more than two short bursts of chemical munitions, and that the largest quantity of chemical munitions dispersed was 31 grams. See Plummer v. Goodwin, Civil Action No. 8:07-2741-TLW-BHH, 2010 WL 419927, at *7 n.4 (D.S.C. Jan. 29, 2010) (unpublished) (finding the use of 33.5 grams of chemical munitions to be "not constitutionally relevant"). Second,

14

Robinson has failed to allege or otherwise show that he suffered any discernible injury as a result of the four confrontations with prison officials. See Sun v. Dickson, Civil Action No. 9:09-2050-RMG-BM, 2011 WL 766930, at *2 (D.S.C. Feb. 25, 2011) (unpublished) (granting summary judgment on claim for excessive force where plaintiff failed to allege any injury); see also Willams v. Thompson, Civil Action No. 5:11cv68, 2012 WL 645060, at *3 (E.D. Tex. Feb. 28, 2012) (unpublished) (noting that "the Fifth Circuit has consistently held that civil rights plaintiffs must allege an actual injury caused by defendants' actions" and that "no case within the Fifth Circuit has upheld an excessive use of force claim in which the plaintiff suffered no injuries at all"). Furthermore, regarding Defendants' need for force, Robinson concedes that he was involved in a verbal altercation with Defendant Young on August 9, 2010, and he does not dispute that he defied prison officials' orders to stop masturbating in both the September 2 and November 15, 2010 confrontations. Sharp v. Longe, C/A No. 1:09-2402-JFA-SVH, 2011 WL 489938, at *4 (D.S.C. Jan. 7, 2011) (unpublished) (explaining that prison guard was justified in administering chemical munitions against confined inmate because "inmates cannot be allowed to be disruptive and violate direct orders of the correctional officers"); Brown v. Walker, Civil Action No. 9:09-3064-RMG-BM, 2010 WL 4484185, at *4 (D.S.C. Oct. 6, 2010), report and recommendation adopted by, 2010 WL 4482100, at *1 (D.S.C. Nov. 1, 2010) (unpublished) (granting summary judgment in favor of defendants on claim of excessive force when prison official used chemical munitions against prisoner who conceded he engaged in verbal altercation with prison official). In his objections, Robinson argues in support of his excessive force claims that Defendants violated prison disciplinary policies and procedures by failing to give him two directives to stop masturbating before discharging chemical munitions. (Objections 6-8.) Even

15

accepted as true, a prison official's failure to adhere to prison procedures is insufficient to establish a constitutional violation that gives rise to a § 1983 claim. <u>Keeler v. Pea</u>, 782 F. Supp. 42, 44 (D.S.C. 1992). Robinson has failed to produce any evidence from which a reasonable jury could conclude that Defendants' use of force was carried out "maliciously and sadistically" to cause harm. Accordingly, the court agrees with the magistrate judge's determination that Young, Starks, and Lloyd are entitled to summary judgment on Robinson's claims for excessive force.

      Robinson's remaining objections to the magistrate judge's Report and Recommendation are non-specific and conclusory or otherwise unrelated to the dispositive portions of the Report. Based on the foregoing, and for the reasons explained in the Report and Recommendation, the court concludes that Defendants are entitled to summary judgment. After a thorough review of the Report and Recommendation and the record in this case, the court adopts Magistrate Judge West's Report and Recommendation and incorporates it herein.

It is therefore

**ORDERED** that Defendant LCI's motion to dismiss, docket number 42, is granted. It is further

**ORDERED** that Defendants' motion for summary judgment, docket number 111, is granted. It is further

**ORDERED** that Robinson's pending motions, docket numbers 67, 82, and 97, are denied as moot.

**IT IS SO ORDERED.**

s/Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
March 13, 2012

### NOTICE OF RIGHT TO APPEAL

Plaintiff is hereby notified that he has the right to appeal this order within thirty (30) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.